108-08/PJG
FREEHILL HOGAN & MAHAR LLP
Attorneys for Plaintiff
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Peter J. Gutowski (PG 2200)



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

COSMOTRADE EXPORTS S.A.,

                              Plaintiff,

          -against-

L-BRIDGE LIMITED a/k/a L BRIDGE
LIMITED; BRITISH MARINE PLC; and
OCEAN BULK CARRIERS LTD.,

                              Defendants.
--------------------------------------------------------------x



08 Civ.

**VERIFIED COMPLAINT**

Plaintiff COSMOTRADE EXPORTS S.A. (hereinafter "COSMOTRADE"), for its Verified Complaint against Defendant L-BRIDGE LIMITED a/k/a L BRIDGE LIMITED, (hereinafter "L Bridge"), BRITISH MARINE PLC (hereinafter "BM"), and OCEAN BULK CARRIERS LTD. (hereinafter "OBC") (collectively, "Defendants") alleges upon information and belief as follows:

1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract of charter party. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333 and the Court's federal question jurisdiction pursuant to 28 U.S.C. §1331 in that the action arises under the New York Convention on the Recognition and

Enforcement of Foreign Arbitral Awards, codified at 9 U.S.C. §201 *et seq.* and/or the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*

2.    At all times material hereto, Plaintiff COSMOTRADE was and still is a business entity duly organized and existing under the laws of a foreign country with an address and place of business at Piraeus, Greece.

3.    At all times relevant hereto, Defendant L Bridge was and still is a foreign business entity organized and existing under the laws of a foreign country with an address at 25 Dorset Square, London, England NW1 6QG.

4.    At all times relevant hereto, Defendant BM was and still is a foreign business entity organized and existing under the laws of a foreign country, also with an address at 25 Dorset Square, London, England NW1 6QG.

5.    At all times relevant hereto, Defendant OBC was and still is a foreign business entity organized and existing under the laws of a foreign country, also with an address at 25 Dorset Square, London, England NW1 6QG.

6.    On or about December 19, 2007, Plaintiff, in the capacity as charterer of the M/V LONDON BRIDGE, entered into a maritime contract of charter party with Defendant L Bridge, as owner of the M/V LONDON BRIDGE, for a one time charter trip for carriage of steel and/or other general and bulk cargoes.  A copy of the pro forma charter party and additional clauses is annexed as Exhibit A.

7.    During the voyage, the vessel experienced significant delays due, *inter alia*, to the breakdown of the vessel's generators, unauthorized deviation in completing the voyage, and various other delays which constituted a breach of the defendant's obligations under the charter.

(See Pre-final Hire Statement attached as Exhibit B outlining specifics of the delays encountered and costs incurred by Plaintiff.)

8.    As a consequence of the foregoing, the Plaintiff suffered time lost which should be considered as off-hire, entitling Plaintiff to a refund of the over-paid hire for those periods of the delay as set forth above, which hire was paid under duress and only paid to the Defendant under a full reservation of Plaintiff's rights and without prejudice.

9.    Plaintiff Cosmotrade performed as required under the charter party.

10.    Based on the above identified breakdowns and delays, Plaintiff Cosmotrade has suffered damages in the amount of $726,822.08, as nearly as can presently be computed, as set forth on the calculation annexed hereto as Exhibit B, the Pre-final Hire Statement.

11.    Despite due demand, L Bridge has refused and/or otherwise failed to pay Plaintiff COSMOTRADE the over-paid hire, and a balance of $726,822.08 remains due and owing.

12.    The charter party provides for the application of English Law and any dispute arising thereunder is to be referred to arbitration at London, and COSMOTRADE specifically reserves its right to arbitrate the substantive matters at issue.  In fact, arbitration between the parties has already been commenced.

13.    This action is brought to obtain security in favor of Plaintiff COSMOTRADE in respect to its claims against L Bridge and in aid of the London proceedings.

14.    Under English law, including but not limited to Section 63 of the English Arbitration Act of 1996, costs including attorneys' fees, arbitrators' fees, disbursements and interest are recoverable as part of Plaintiff's claim.

15.    This action is further brought to obtain security for the additional sums which are recoverable including Plaintiff's anticipated attorneys' and arbitrators' fees and costs in the

London arbitration and interest, all of which are recoverable as part of Plaintiff's claim under English law.

16.     Plaintiff estimates, as nearly as can be computed, that the legal expenses and costs of prosecuting the claim in London arbitration will be $100,000, and interest on its damages are estimated to be $152,632.32 (calculated at the rate of 7% for a period of 3 years, the estimated time for completion of the proceedings in London) including any appeal of any arbitration award issued.

## Alter Ego

17.     Defendants are alter egos of one another and share officers, directors, shareholders, employees and/or commingle funds and otherwise ignore the corporate formalities attendant to their status as separate entities, or that one entity so dominates and controls the other(s) that their separate corporate identities have been lost and that they function as a single entity and should be held accountable for the debts of one another.

18.     Defendants failed to maintain an arm's length relationship with each other.

19.     Defendant L Bridge lacked adequate capital and/or failed to maintain adequate capital.

20.     There was a general failure by L Bridge to exercise individual, independent business discretion, which responsibilities were instead dominated and controlled by Defendants BM and/or OBC.

21.     Defendants BM and/or OBC utilized Defendant L Bridge as a mere shell and instrumentality to conduct BM's and/or OBC's own business, all of which rendered L Bridge's corporate form a fiction as it was otherwise dominated and controlled by BM and/or OBC.

22.     All three defendants share the same address.

23.    Defendants BM and OBC both responded to correspondence addressed directly – and only – to Defendant L Bridge.

24.    Defendants BM and L Bridge both claim to be the "owners" of the M/V LONDON BRIDGE.  Attached as Exhibit C is a page from BM's website which shows "L Bridge Limited" as owners of the M/V LONDON BRIDGE and BM as "agents".  Attached as Exhibit D, though, is a letter from BM's London solicitors, Paul Rodgers & Co., which states "We act on behalf of British Marine PLC the 'Owners' of the mv LONDON BRIDGE".

25.    Attached as Exhibit E are communications that show that hire that was due to the registered owners of the M/V LONDON BRIDGE (Defendant L Bridge) was asked to be paid instead to Defendant BM.  Meanwhile, the "notice of fixing" of the charter party was executed by Defendant OBC on behalf of Defendant BM – not the registered owner, Defendant L Bridge, with whom the fixture was made.  Hire payments made by COSMOTRADE were actually and correctly paid to Defendant L Bridge only, without objection from Defendants    .

26.    At all times material hereto, Defendants BM and/or OBC operated, controlled, manipulated, dominated and controlled Defendant L Bridge, and/or disregarded L Bridge's corporate separateness and/or disregarded their own corporate separateness, or vice-versa.

27.    Defendants BM and/or OBC performed L Bridge's duties and obligations as though L Bridge's business was their own, or vice-versa.

28.    In addition, L Bridge has used Defendants BM and/or OBC to perpetrate a fraud on Plaintiff COSMOTRADE, or vice-versa.

29.    The details of the fraud include but are not limited to repeated demands for charter hire that was not earned because the vessel was off-hire for the time periods for which charter hire was demanded, as set forth more particularly above.  Defendants furthered this

fraudulent purpose by obtaining a Rule B attachment of their own in this Court in order to extract their wrongful demand for hire, which was paid under protest and reservation of right. In making such payment, Defendants were placed on notice of COSMOTRADE's claim that such payment – and the demand for it – was improper.

30.    Defendants BM and/or OBC are in the business of handling, sending and receiving the property of Defendant L Bridge. As a consequence, Defendants BM and/or OBC are paying agents, funding agents and/or receiving agents of Defendant L Bridge such that Defendants BM and/or OBC are now or will soon be, holding assets belonging to Defendant L Bridge and vice-versa.

31.    Defendants are affiliated companies such that Defendants are now, or will soon be, holding assets belonging to one another.

32.    Defendants BM and/or OBC are aliases of L Bridge, and vice-versa.

### Request for Rule B Relief

33.    Upon information and belief, and after investigation, Defendants cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendants have, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendants (collectively hereinafter, "ASSETS"), including but not limited to ASSETS in its name or for its benefit, at, moving through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Attachment issued herein.

34. The total amount to be attached pursuant to the calculations set forth above is $979,454.70.

WHEREFORE, Plaintiff COSMOTRADE EXPORTS S.A. prays:

a. That process in due form of law according to the practice of this Court may issue against Defendants citing them to appear and answer the foregoing;

b. That if Defendants cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendants up to and including $979,454.70 be restrained and attached, including, but not limited to any cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or being transferred from or for the benefit of Defendants (collectively hereinafter, "ASSETS"), including but not limited to such ASSETS as may be held, received, or transferred in their own names or as may be held, received or transferred for their benefit, at, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein;

c. That this Court retain jurisdiction over the matter for any subsequent enforcement action as may be necessary; and

    d.    For such other, further and different relief, including but not limited to an award

of interest and costs in addition to the principal claim, as this Court may deem just

and proper in the premises.

Dated: New York, New York
       February 29, 2008

                          FREEHILL HOGAN & MAHAR LLP
                          Attorneys for Plaintiff
                          COSMOTRADE EXPORTS S.A.

                          By _____
                             Peter J. Gutowski (PG 2200)
                           80 Pine Street
                           New York, NY 10005
                           (212) 425-1900

Exhibit A

# TIME CHARTER

## GOVERNMENT FORM

Approved by the New York Produce Exchange

November 6th, 1913—Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946

1. This Charter Party, made and concluded in ..Piraeus.......................................................... 19ᵀᴴ..........day of December 2007
2. Between ..Messrs. .L-BRIDGE..LIMITED..LONDON........................................................................................
3. Owners of the good ..M/V .LONDON..BRIDGE........................ Steamship/Motorship
4. of ...26,059.............. tons gross register, and ......14,880..tons net register, having engines of..........................of....UK. .FLAG.,...
5. and with hull, machinery and equipment in a thoroughly efficient state, and classed.......N.K.........................indicated horse power
6. at .........of about ...55564.9 (including hatch coaming), cubic meters feet-bale capacity, and about ...45708.... tons of 2240 lbs.
7. deadweight capacity (cargo and bunkers, constants excluding-including fresh water and store not exceeding one-and-one-half-percent-of-ship's-
8. deadweight capacity, allowing-a-minimum-of-fifty-tons) on a draft of ..11,620 M.....feet......inches on............................ Summer-freeboard, inclusive-of-permanent
9. bunkers ,.................................................which-are-of-the-capacity-of-about............................................tons-of-fuel, and-capable-of-steaming,-fully-laden,--under-good
10. weather-conditions-about......... knots-on-a-consumption-of-about...........................of-best-Welsh-coal--best-grade-fuel-oil-best-grade-Diesel-oil
11. now ...TRADING.............................................................................................................................................................
12.
13. .........................and...Messrs. ...........COSMOTRADE EXPORTS S.A..................................... Charterers of the City of .......TORTOLA-B.V.I....
14. about.....ONE TIME CHARTER TRIP VIA SAFE PORT(S)/ SAFE BERTH(S)/ SAFE ANCHORAGE(S) ALWAYS AFLOAT ALWAYS WITHIN
15. INSTITUTE WARRANTY LIMITS INCLUDING MULTIPLE LOADING / DISCHARGE VIA BLACK SEA / EAST MEDITERRANEAN TO RED SEA,
16. PERSIAN GULF, INDIA IN/OUT GEOGRAPHICAL ROTATION WITH STEELS AND/OR OTHER GENERALS AND BULK CARGOES, INCLUDING
17. MULTIPLE ROTATION. DURATION ABOUT 33-38 DAYS WITHOUT GUARANTEE.
    Witnessed, That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for
    within below mentioned trading limits.
    Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for
    the fulfillment of this Charter Party. Acceptance of delivery of the vessel by charterers shall not constitute a waiver of
    *owners' obligations under this Charter Party.*
18. Vessel to be placed at the disposal of the Charterers, at ON DROPPING OUTWARD PILOT ODESSA, ANY TIME DAY/NIGHT
19. SUNDAYS/HOLIDAYS INCLUDED.........................................................................................................................
20. in-such-dock-or-at-such-wharf-or-place-(where-she-may-safely-lie,-always-afloat,-at-all-times-of-tide,-except-as-otherwise-provided-in-clause No.6)-as
21. the-Charterers-may-direct. If-such-dock, wharf-or-place-be-not-available-time-to-count-as-provided-for-in-clause-No.-5. Vessel-on-her-delivery-to-be
22. ready to receive any permissible cargo with clean-swept holds and tight, staunch, strong and in every way fitted for the service, AND SHALL REMAIN
    SO FOR THE CURRENCY OF THIS TIME CHARTER, having water ballast, winches-and-
23. donkey-boiler-with-sufficient-steam-power,-or-if-not-equipped-with-donkey-boiler,-then-other-power-sufficient-to-run-all-the-winches-at-one-and-the-same
24. time (and with full complement of officers, seamen, engineers and firemen according to regulations for a vessel of her tonnage), to be employed, in
25. carrying lawful merchan-
26. dise, including-petroleum-or-its-products,-in-proper-containers,-excluding........ SEE CLAUSE 35A.....................................
27. (vessel is not to be employed in the carriage of the Live Stocks--but-Charterers-are-to-have-the-privilege-of-shipping-a-small-number-on-deck-at-their-risk,
    all-necessary-fittings-and-other-requirements-to-be-for-account-of-Charterers)--in such lawful trades, between GOOD safe port and/or GOOD SAFE
28. ports AND GOOD SAFE BERTH AND/OR GOOD SAFE BERTHS AND GOOD SAFE ANCHORAGE AND/OR GOOD SAFE ANCHORAGES,
    ALWAYS AFLOAT, ALWAYS WITHIN INSTITUTE WARRANTY LIMITS (SEE ALSO CLAUSE 30) in British North
29. America-and/or-United States-of-America-and/or-West-Indies-and/or-Caribbean-Sea,-and/or-Central-America,-and/or-Gulf-of-Mexico, and/or
30. Mexico,-and/or-South-America
    and/or-Africa,-and/or-Asia,-and/or-Australia,-and/or-Tasmania,-and/or-New-Zealand,-but-excluding-Magdalena-River,-River-St.-Lawrence-between
31. October-31st-and-May-15th,-Hudson-Bay-and-all-unsafe-ports,-also-excluding,-when-out-of-season,-White-Sea,-Black-Sea and-the-Baltic
32.

33.
34.
35.
36. as the Charterers or their Agents shall direct, on the following conditions:

1. That the Owners shall provide and pay for all provisions, wages including overtime (see also clause 23a), boatage for their own
37. business, immigration and consular shipping and discharging fees of the Crew, also consular fees pertaining to vessel's nationality and all garbage removal and gangway watchmen except compulsory shall pay for the
38. insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including boiler fresh water except for hold cleaning and lubricating oil and maintain her class and keep
39. the vessel in a thoroughly efficient state in hull, machinery and equipment for and during the service with inspection certificates necessary to comply with safety and health regulations and with current requirements at all ports of call for and during the service.

2. That whilst on hire the Charterers shall provide and pay for all the fuel except as otherwise agreed, Port Charges, compulsory or recommended
40. Pilotages, or recommended by governmental authority or internationally recognized body Agencies, Commissions,
41. Consular Charges (except those pertaining to the Crew or flag of vessel), and all other usual expenses except those before stated, but when the vessel
42. a port for causes for which vessel is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of
43. illness of the crew to be for Owners account. SEE ALSO CLAUSE 103. As for fumigations ordered because of cargoes carried or ports visited while vessel is employed under this
43. charter to be for Charterers account. SEE ALSO CLAUSE 103. As for fumigations on for charterers account after vessel has been on charter for a continuous period
44. six months or more. Owners to provide and keep on board valid Deratization Certificate throughout the time Charter Period.
45. Charterers are to provide necessary dunnage and shifting boards, also any extra fittings requisite for a special trade or unusual cargo, but
46. Owners to allow them the use of any dunnage and shifting boards and lashing equipment already aboard vessel. Charterers to have the privilege of
47. using shifting boards
48. for dunnage, they making good any damage thereto.

3. Bunkers on delivery/redelivery: See Clause 3A. That the Charterers, at the port of delivery, and the Owners, at the port of re-delivery, shall take
49. over and pay for all fuel remaining on
50. board the vessel at the current prices in the respective ports, the vessel to be delivered with not less than ........ tons and not more than ........ tons and to be re-delivered with not less than ........ tons and not more than ........ tons.

4. That the Charterers shall pay for the use and hire of the said Vessel at the rate of US$68,000.00 - *DAILY INCLUDING OVERTIME PAYABLE*
51. *EVERY 15 DAYS IN ADVANCE*........ United States Currency per ton on vessel's total deadweight carrying capacity, including bunkers and
52. stores on
53. ........ summer freeboard, per Calendar Month, commencing on and from the day/time of her delivery, as aforesaid,
54. and at
54. and after the same rate for any part of a day *month* ; hire to continue until the hour time of the day of her re-delivery as per Clause 55 in like good
55. order and condition, ordinary wear and tear excepted, to the Owners (unless lost) at *DROPPING LAST OUTWARD SEA PILOT ONE SAFE PORT KARACHI/ MUMBAI RANGE*
56. *AT CHARTERERS' OPTION ANY TIME DAY OR NIGHT, SUNDAYS AND HOLIDAYS INCLUDED* unless otherwise mutually agreed, Charterers are to give Owners not less than
56. (see Clause 32) days
57. notice of vessels expected date of re-delivery, and probable port.

5. Payment of said hire to be made in cash in United States Currency, *semi-monthly every 15days* in advance, and for
58. the last 15 days last half month or part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the balance day by day, as it becomes
59. due, if so required by Owners, unless bank guarantee or deposit is made by Charterers, otherwise failing the punctual and regular payment of the
60. hire, or bank guarantee, or on any material breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel from the service of the
61. Charterers, without prejudice to any claim they (the Owners) may otherwise have on the Charterers. Time to count from 7 a.m. on the working day
62. following that on which written notice of readiness has been given to Charterers or their Agents before 4 p.m., but if required by Charterers, they
63. to have the privilege of using vessel at once, such time used to count as hire.
64. Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain subject by the Charterers or their Agents, subject
65. to 2 1/2% commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the
66. application of such advances.

6. That the cargo or cargoes be laden and/or discharged in any dock or at any wharf or place or such open roadstead anchorage, however if such
67. anchorage place is not customary for same size of vessel, Owners' prior consent to be necessary, which shall not be unreasonably withheld
68.

that Charterers or their Agents may
direct, provided the vessel can safely lie always afloat at any time of tide, ~~except it is customary for similar size vessels to safely lie aground.~~

7. That the whole reach of the Vessel's Hold, and other usual places of loading (not more than she can reasonably stow and carry), also accommodations for Supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew, tackle, apparel, furniture, provisions, stores and fuel. ~~Charterers have the privilege of passengers as far as accommodations allow. Charterers paying Owners ............... per day per passenger for accommodation and meals. However, it is agreed that in case any fines or extra expenses are incurred in the consequence of the carriage of passengers, Charterers are to bear such risk and expense.~~

8. That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and agency; and Charterers are to load, stow, and trim, discharge, *lash, tally, unlash, dunnage, secure and tally (if applicable)* the cargo at their expense under the supervision of the Captain, who is to sign Bills of Lading for cargo as presented, in conformity with Mate's or Tally Clerk's receipts.

9. That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers, the Owners shall on receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments.

10. That the Charterers shall have permission to appoint a Supercargo, who shall accompany the vessel and see that voyage are prosecuted with the utmost despatch. He is to be furnished with free accommodation, and same fare as provided for Captain's table. Charterers paying at the rate of $1.00 per day. ~~Owners to victual Pilots and Customs Officers, and also, when authorized by Charterers or their Agents, to victual Tally Clerks, Stevedore's Foreman, etc., charterers paying at the current rate per meal, for all such victualling. See Clauses 72 and 91.~~

11. That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, and the Captain shall keep a full and correct Log of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the Charterers, their Agents or Supercargo, when required, with a true copy of daily deck and engine' Logs, showing the course of the vessel and distance run and the con-

12. That the Captain shall use diligence in caring for the care, custody and the ventilation of the cargo. sumption of fuel, as well as revolutions of main engine and velocity and direction of wind and sea, all in English language.

13. ~~That the Charterers shall have the option of continuing this charter for a further period of .......SEE LINE 14.~~

14. ~~That if required by Charterers, time not to commence before ...... days previous to the expiration of the first named term, or any declared option.~~ engaging written notice thereof to the Owners or their Agents ...... **12:00H/RS LT 20TH DECEMBER 2007.** ~~written notice of readiness on or before ...... 24:00HRS LT 20TH DECEMBER 2007.......~~ but not later than 4 p.m. Charterers or their Agents to have the option of cancelling this Charter if vessel not have given written notice of readiness on or before ...... 24:00HRS LT 20TH DECEMBER 2007.......

15. That in the event of the loss of time from deficiency *and/or default of crew or officers or deficiency* of men or stores, fire, breakdown or damages to hull, machinery or equipment, grounding, detention by average accidents to ship or cargo, *or oil pollution only due to ship's fault,* drydocking for the purpose of examination or painting bottom, or by any other cause whatsoever preventing the full working of the vessel, *or any extra delay in consequence thereof* the payment of hire shall cease for the actual time thereby lost; and if upon the voyage the speed be reduced by defect in or breakdown of any part of her hull, machinery or equipment, the time so lost, and the cost of any extra fuel consumed in consequence thereof, and all extra *relevant* expenses *fully documented or telex/fax received from relevant agents* shall be deducted from the hire.

16. That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas, Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted.

17. ~~That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court.——The Arbitrators shall be commercial men.~~ *(See Clause No.54)* The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the purpose of saving life and property. *SEA ALSO CLAUSE 58*

18. That the Owners shall have a lien upon all cargoes, and all sub-freights *and sub hires* for any amounts due under this Charter, including Average contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess

112. deposit to be returned at once.  Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which
113. might have priority over the title and interest of the owners in the vessel.
114. 19. That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and
115. Crew's proportion. General Average shall be adjusted, stated and settled, according to Rules 1 to 15, inclusive, 17 to 22, inclusive, and Rule
116. ~~F~~York-Antwerp Rules 1994 *in London and any subsequent amendments* ~~1924~~, at such port or place in the United States as may be selected by the
117. carrier, and as to matters not provided for by these

*into*

Rules, according to the law and usages at the port of ~~London~~ New York.  In such adjustment disbursements in foreign currencies shall be exchanged

118. ~~United States money at the rate prevailing on the dates made~~ and allowances for damage to cargo claimed in foreign currency shall be converted at
119. the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship.  Average agreement or
120. bond and such additional security, as may be required by the carrier, must be furnished before delivery of the goods.  Such cash deposit as the carrier
121. or its agents may deem sufficient for the contribution of the goods and for any salvage and special charges incurred in respect of the
122. required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery.  Such deposit shall, if
123. carrier, be payable in United States money and be remitted to the adjuster.  When so remitted the deposit shall be held in a special account at the
124. place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be paid in
125. United States money.  *Hire is not to contribute to General Average.*
126. In the event of accident, danger, damage, or disaster, before or after commencement of the voyage resulting from any cause whatsoever,
127. whether due to negligence or not, for the consequence of which, the carrier is not responsible, by statute, contract, or otherwise, the
128. goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices,
129. losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the
130. goods.  If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or
131. ships belonged to strangers.
132. Provisions as to General Average in accordance with the above are to be included in all bills of lading issued hereunder.
133. 20. Fuel used by the vessel while off hire, also for cooking, condensing water, or for grates and stoves to be agreed to as to quantity, and the
134. cost of replacing same, to be allowed by Owners.
135. ~~21. That as the vessel may be from time to time employed in tropical waters during the term of this Charter, Vessel is to be docked at a~~
136. ~~convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary, at least once in every six months, reckoning from~~
137. ~~time of last painting, and payment of the hire to be suspended until she is again in proper state for the service.~~
138. *No dry-docking during this Time Charter Trip except in case of emergency.* ...SEE ADDITIONAL CLAUSE NR 47. .......................
139.
140. 22. Owners shall maintain the gear of the ship as fitted, providing gear (for all *cranes derricks*) capable of handling lifts up to *maximum capacity three*
—tons, also *as per description*
141. providing ropes, falls, slings and blocks as *on board*. ~~If vessel is fitted with derricks capable of handling heavier lifts, Owners are to provide necessary~~
~~gear for~~
142. ~~same, otherwise equipment and gear for heavier lifts called for. Charterers' account. Owners also to provide on the vessel lanterns and oil for~~
143. ~~night work, and vessel to give use of electric light when so fitted, but any additional lights over those on board to be at Charterers' expense. The~~
144. ~~Charterers to have the use of any gear on board the vessel. See Clause No. 23A.~~
145. 23. Vessel to work night and day, if required by Charterers, and all *cargo gear* winches to be at Charterers' disposal during loading and discharging;
146. ~~steamer to provide one winchman per hatch to work winches day and night, as required. Charterers agreeing to pay engineers, engineers, winchmen,~~
147. ~~deck-hands and donkeyman for overtime work done in accordance with the working hours and rates stated in the ship's articles. If the use of the~~
148. ~~port, or labor unions, prevent carrier from driving winches, shore crane/men~~ *Winchmen to be employed and paid by Charterers. In the event of a*
149. ~~disabled cranes or derricks~~ which or winches, or
149. insufficient power to operate winches, Owners to pay for shore engine, or engines, in lieu thereof, if required, and pay any loss of time
150. occasioned thereby.
151. ~~24. It is also mutually agreed that this Charter is subject to all the terms and provisions of and all the exemptions from liability contained~~
152. ~~in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled "An Act relating to Navigation of Vessels;~~
153. ~~etc." In respect of all cargo shipped under this charter to or from the United States of America. It is further subject to the following clauses,~~
154. ~~both which are to be included in all bills of lading issued hereunder:~~
155. ~~U.S.A. Clause Paramount~~  *General Clause Paramount*
156. ~~This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April~~

157. ~~46. 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of~~
158. ~~any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this bill of lading~~
159. ~~be repugnant to said Act to any extent, such term shall be void to that extent, but no further.~~
160. ~~Both-to-Blame Collision Clause~~
161. ~~If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the~~
162. ~~Master, mariner, pilot or the servant of the Carrier in the navigation or in the management of the ship, the owners of the goods carried~~
163. ~~hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss~~
164. ~~or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-~~
165. ~~carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non-carrying ship or her~~
166. ~~owners as part of their claim against the carrying ship or carrier.~~
167. ~~25. The vessel shall not be required to enter any ice-bound port or any port where lights or light ships have been or are about to be with-~~
168. ~~drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the~~
169. ~~port or to get out after having completed loading or discharging.~~
170. 26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers.    The owners to remain responsible for the
171. navigation of the vessel, *acts of pilots and tugboats,* insurance, crew, and all other matters, same as when trading for their own account.
172. 27. A commission of 2.50 2-¼ per cent is payable by the Vessel and Owners to ......*OPTIMA CHARTERING* ..............
173.
174. on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.
175. 28. An address commission of 2 ½ per cent payable to ......*Charterers* ......................on the hire earned and paid under this Charter.

*Additional Clause 3A to 108 as attached are to be fully incorporated in this Charter Party.*

*CHARTERERS :*
COSMOTRADE EXPORTS S. A.

*OWNERS :*
L-BRIDGE LIMITED

This Charter Party is a computer generated copy of the **NYPE**(Reversed 3rd October, 1946) from printed under licence from the Association Ship Brokers & Agents (U.S.A), Inc., using software which is the copyright of Strategic Software Limited.

It is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the insertion of new characters, such characters being clearly highlighted by underlining or use of colour or use of a larger font and marked as having been made by the licensee or end user as appropriate and not by the author.

ADDITIONAL CLAUSES TO M/V "LONDON BRIDGE"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 19TH DECEMBER 2007

### CLAUSE 3A. REMAINING BUNKERS

Bunkers on delivery about 750/800 metric tons IFO  and about 10/20 metric tons MGO. Bunkers on redelivery to be about same quantity as actually on board on delivery.

Charterers to take over and pay for bunkers together with first hire payment bunkers at USD 490 per metric ton IFO and USD 780 per metric ton MGO .

Charterers have the right to deduct from last sufficient hire payment estimated value of bunkers on redelivery.

### CLAUSE 5A. PAYMENT OF HIRE

Payment of hire shall be made by Charterers, in cash every 15 days in advance so  as to be received by Owners or their designated payee in London in United States currency on due date, free of any bank/transfer charges or commissions.

Payment of hire 'in cash every 15 days in advance' shall mean that on the day hire is due Charterers to transfer funds from London to Owners' designated bank account with reference to the vessel's name.

Notwithstanding anything contained herein to the contrary, it is understood that if at any time during the currency of this Charter the hire payment shall become due, on a non-banking day such as Saturday, Sunday, holiday or outside normal banking hours, payment of hire shall be made on a banking day on or before such a due date.

Where there is any failure to make "punctual and regular payment" due to oversight, negligence error or omission on the part of the Charterers or their bankers, the Charterers shall be given by the Owners three (3) banking days (as recognized at the agreed place of payment) notice to rectify the failure and when so rectified within these three (3) days following the Owners' notice, the payment shall stand as regular and punctual payment.

### CLAUSE 15A. NECESSARY DOCUMENT FOR GEAR AND EQUIPMENT

With reference to Clause 15, it is agreed as follows:

Referring to line 97, the lack on board at any time of any necessary documentation attesting to the condition of all gear and equipment and complying with regulations according to vessel's specifications shall be deemed a deficiency, with any loss of time occasioned thereby to be treated as off-hire and any other expenses to be for

1

ADDITIONAL CLAUSES TO M/V "LONDON BRIDGE"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 19TH DECEMBER 2007

Owners' account. Referring to lines 97 and 99 the time lost for which hire shall cease (or be suspended) shall also, include – inter-alia:

(i)     from the time the vessel puts back to a port or departs from or interrupts the voyage or is withdrawn from the service of Charterers for drydocking, repairs or other Owners' purposes, until the vessel is again in the same position or at a point equivalent thereto.

(ii)    losses of time due to delay to the vessel or interference with Charterers' use of the vessel by strikes, boycotts or secondary boycotts, manifestations or stoppages in any form on account of the vessel's flag, registry, ownership, manning or wages pattern.

(iii)   if, at any time during the charter, the vessel is rejected by qualified inspector at loading port because of unusual rust and/or rust scaling, any time lost and any expenses incurred in making the vessel suitable for the cargo are to be for the Owners' account.

**CLAUSE 20A**
Deleted

**CLAUSE 23A LIGHTING**
With reference to Clause 23, it is agreed as follows:
Owners to arrange for the working of all time and necessary overtime needed for the efficient operation of the vessel in all respects. Owners agree to provide sufficient lighting on board with ship's lights and light clusters a son board to permit night work at all hatches at one and the same time, free of expenses to the Charterers.

**CLAUSE 29. CONFIDENTIALITY**
All negotiations and fixture to remain strictly private and confidential.

**CLAUSE 30. I.T.F. & ISM CLAUSE + ISPS CLAUSE**
The Owners of the vessel guarantee that the minimum terms and conditions of employment of the crew of the vessel are now or will be prior to presentation of the vessel for delivery and will remain for the period of this charter-party covered by an I.T.F. Agreement of a Bona Fide Trade Union Agreement acceptable by I.T.F.

In the event that the vessel is delayed by reason of boycotts, strikes, labour stoppages or other actions by the ITF against the vessel due to employment conditions, time so lost shall be considered as off-hire, and proven costs directly resulting therefrom are to remain for Owners' account.

During the currency of this Charter Party, the Owners shall procure that both the vessel and "the Company" (as defined by the ISM Code) shall comply with the

2

ADDITIONAL CLAUSES TO M/V "LONDON BRIDGE"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 19TH DECEMBER 2007

requirements of the ISM Code. Upon request the Owners shall provide a copy of the relevant Documents of Compliance (DOC) and Safety Management Certificate (SMC) to the Charterers.

Except as otherwise provided in this Charter Party, loss, damage, expense or delay caused by failure on the part of the Owners or "the Company" to comply with the ISM Code shall be for the Owners' account.

BIMCO ISPS Clause to apply in full.

## CLAUSE 31. NOTICES OF DELIVERY
Owners will keep Charterers advised of the itinerary of the vessel promptly and will serve on fixing 3/2/1 days definite delivery notices.

## CLAUSE 32. NOTICES OF REDELIVERY
The Charterers to give minimum 15 days redelivery notice of intended time of redelivery and range. Such redelivery notice to be followed by 10/7 days notices with expected redelivery time and port and one 5/3/2/1 definite notice of redelivery date and port.

## CLAUSE 33. CHARTERERS' INSPECTION
Charterers to have the option of holding an inspection of the vessel before delivery, at any time, without interfering with the progress of the vessel's construction, at their risk and expenses. Charterers to have the option of holding an inspection of the vessel, at any time between delivery and redelivery, at their risk and expenses. In all cases, Charterers shall tender at least three (3) days advance notice.

In all cases, Owners and Master to give every facility and assistance to carry out this Inspection.

## CLAUSE 34.
Deleted

## CLAUSE 35.
Deleted

## CLAUSE 35A. CARGO EXCLUSIONS
Cargo Exclusions:
 Livestock, Arms, Ammunition, Acids, Explosives, Asphalt, Pitch in   bulk, Ammonium Nitrate , Aggregates,  Black Powder,  Blasting Caps, Bones, Charcoal, Naptha, Nuclear Fuel,  Pitch of any kind, Resin, Logs, Expellers of any kind, Indian Coal, Pond Coal, Wet Hides, Calcium Carbide, Ferro Silicon, Pipes, Old Rails Direct

ADDITIONAL CLAUSES TO M/V "LONDON BRIDGE"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 19TH DECEMBER 2007

Reduced Iron/Iron Ore Lumps/Pellets, Acids, Naphtha, Tar, Hides, Bones, Shavings, Salt, Saltpetre, Ferro Silicon, Quebracho Extract, Silicon Manganese, Silicon, Sponge Iron, Copra, Fishmeal, Scrap, Motor Blocks and Turnings, Swarf, Tar, Tobacco, Metal Borings And Cuttings, Hot Briquetted Iron and their Fines, Wheatflour in bulk, Bagged Rice,  Bulk Rice For West African Destination, Wood Pulp, News Print, Paper Products, Creosoted Goods, Bulk Borax, Motor Spirit, Nuclear and Radioactive Waste/Materials/Goods and its Products/by-products, Petroleum and its products, Charcoal, Bulk Cement (Including Cement Clinker), Cotton, Sulphur, Soda Ash, Steel Slabs      In      Vertical/Californian      Block      Stow,      all unlawful/embargoed/injurious/inflammable/Dangerous Goods/Commodities as listed in latest IMO D.G.Code and/ or any subsequent Amendments/Modifications thereof.

Notwithstanding The Above :
- Deck Cargo to be allowed under this Charter Party subject to Owners Protective Clause, which as follows :

Charterers to have the option of loading cargo on deck/hatch covers at Charterers time/risk/expense always in accordance with vessels deck/hatch cover strength and vessels stability to Master's satisfaction. All Bills of Lading for deck cargo shall be marked "Shipped on deck at Shippers/Receivers Risk and expense, vessel not responsible for damage and/or loss howsoever caused".

**CLAUSE 36. AGENTS**
Charterers undertake to keep Owners informed during the period of this charter as regards the itinerary of vessel and itinerary of vessel and the name of their Agents at all ports of call. Owners' to appoint Owners' agents to attend all Owners' matters. In case Owners unable to arrange same, Charterers to agree to have their Agents to attend such matters with Owners settling with Agents according to Agent's usual husbanding tariff or rate mutually agreed beforehand.

**CLAUSE 37.SEA WATER IN DOUBLE-BOTTOM**
Owners to permit sea water to be placed in any water ballast double bottom tanks except Fuel Oil, Diesel Oil and fresh water tanks in order to press tanks upto full capacity to give maximum stability always subject master's approval.

**CLAUSE 38. TRADING EXCLUSIONS**
Vessel to be employed in lawful trades for the carriage of lawful merchandise only between good and safe ports/berths/anchorages where vessel can safely lie always afloat always within Institute Warranty Limits.
Specifically excluding Russian Siberian ports, CIS Pacific Ports, Equador, El Salvador, North Korea, Cambodia, Iraq, Iran, Israel And Israelian controlled territories, Lebanon, Syria, Angola (including Cabinda), Albania, Amamapare, Ethiopia, Somalia, Zaire, ,Liberia, Libya, Former Yugoslavia, Cuba, Haiti, Belize, Nicaragua, St Lawrence River West Of Montreal, areas/ports affected by Asian gypsy moth and any areas/ports that may be included as restricted ports by the War Committee Of Lloyds Underwriters.

ADDITIONAL CLAUSES TO M/V "LONDON BRIDGE"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 19TH DECEMBER 2007

Charterers are not allowed to:

Send vessel for whatever purposes directly from Taiwan to mainland China or vice-verca, unless calling an intermediate port not in Taiwan nor in mainland China.
In case of any breach by Charterers of any of the above, Charterers to be responsible for any/all consequences and/or liabilities resulting/arising therefrom  and also for any/all loss(es/damage(s) sustained by the owners.

Any additional war risks insurance premium and/or any increase in war risks insurance premium for trading to areas where such additional and/or increased premium payable as designated by war risk underwriters to be for charterers account, and Charterers to make prompt refund to owners on production of invoice issued by Underwriters' Insurance brokers. Crew war risk bonuses, if any, to be for Charterers account.

Additional war risk premium not exceeding what it is quoted in London market.

## CLAUSE 39. CERTIFICATES
Vessel to have on board valid certificates, including oil pollution certificates, necessary for the agreed trading limits and such certificates to be maintained throughout the period of charter. Any consequences due to vessel lacking necessary certificates, or if the same should be outdated, to be for Owners' risk and expense. Vessel also to have a board a valid deratization or deratizaton exemption certificate and such certificates to be maintained throughout the period, of the charter and if fumigation is necessary for the purpose of deratization certificate, cost of same and detention to be for Owners' account except as provided in Clause 2.

Owners warrant that vessel possesses valid international tonnages measurement certificate pursuant to the 1969 convention including tonnage certificate required by the authorities in any country to which the vessel may trade.

## CLAUSE 40. SUEZ CANAL TONNAGE CERTIFICATE
Throughout the period of the charter, vessel shall have on board current valid Suez canal tonnage certificate and will so comply with all applicable requirements, regulations and recommendations so as to avoid any delay in transit of canal. Any uplift in tolls, fines or other penalties due to vessel's infringement of SCA requirements or directives under the Charter party or otherwise and all resulting consequences thereof are to be for Owners' account.

Any delay due to non compliance or any lack of proper documentation or equipment according to vessel's specifications is to be treated as off-hire provided that same prevents the full use of the vessel by the Charterers and any expenses incurred thereby to be for Owners' account, unless such non-compliance is due to the default of Charterers, sub-Charterers or their Agents. Should such non-compliance only partly

5

ADDITIONAL CLAUSES TO M/V "LONDON BRIDGE"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 19TH DECEMBER 2007

affects the Charterers' use of the vessel then off hire shall be calculated on pro-rata basis.

In the event that time is lost in Owners' obtaining any necessary licenses or permits or similar documents from any authority for Owners' own account, same shall be treaded as off-hire and any extra expenses, including any related to inspections of the vessel or crew by any authority, shall be for Owners' account. Should such non-compliance only partly affects the Charterers' use of the vessel then off-hire shall be calculated on pro-rata basis.

Charterers to give Owners reasonable due advance notice to prepare and to process necessary documents before sending vessel to any port/country where new legislation or additional licenses/permits/documents may be required.

Time lost due to lack of licenses/permits/documents of vessel is for Owners' account, time lost due to lack of licenses/permits/documents of cargo is for Charterers' account.

**CLAUSE 41. CALLING AT U.S. PORTS**
Non applicable.

**CLAUSE 42. WAR RISK INSURANCE & CREW WAR BONUS**
Basic war risk insurance and crew war bonus to be for Owners' account. In the event Charterers employ the vessel in a trade for which there is an additional war risk insurance premium on hull and machinery and officers/crew including blocking trapping insurance to be for Charterers account. Vessel to remain on full hire. Same to be arranged by Owners and to be settled by Charterers with next hire payment after receipt of supporting official vouchers.

Charterers to pay such additional premium based on vessel's current war risk policies but in any case not to exceed that for minimum coverage, under the London Underwritters minimum scale. Orders of Owners War Risk Underwritters are always to be followed.

If war situation becomes serious, Owners have the right to refuse the vessel entering into war zone and Owners and Charterers shall further discuss in good faith on alternative arrangement.

**CLAUSE 43. MASTER AND CREW ASSISTANCE & SERVICES**
With reference to Clause 8 of this Charter Party, customary assistance shall mean all types of work and services included in the hire which the Master and the crew would normally do when the ship is trading for the Owners' account, if permitted by local regulations, such as, but not limited to:

    a. Raising and lowering of cranes and/or gangways in preparation for the loading and discharging.

6

ADDITIONAL CLAUSES TO M/V "LONDON BRIDGE"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 19TH DECEMBER 2007

b. Opening and closing of hatches in connection with loading and discharging, provided local regulations permitted.
c. Closing and opening of hatches in the event of weather which may adversely affect condition of cargo carried on board during loading and discharging, provided local regulations permitted.
d. Supervision for loading and discharging and everything related thereto
e. Maintaining sufficient electric power on all cranes whilst loading and discharging.
f. Shifting vessel and ballasting/deballasting during loading and discharging and shifting berth(s).
g. Docking and undocking in connection with loading and unloading cargo and/or bunkering.
h. Necessary assistance in the vessel's bunkering operation.
i. Lashing and securing of cargo under deck in case of emergency at sea.
j. Intermediate cleaning/washing between cargoes making the vessel for the next cargoe(es).
k. All garbages removal/disposal, custom and/or excise duties on ship's store to be for Owners' account.
l. Warping alongside berths whenever required.

The Master shall be responsible for the safe keeping of all gear, equipment, and/or stores supplied to the vessel by or for Charterers' account and the Master shall keep a record of all such gear, equipment and/or stores so supplied, Master to maintain same in good condition. Such gear equipment and/or stores to be delivered to the Charterers prior to redelivery of the vessel to the Owners or if required by the Charterers at any time during the charter in like good order and condition as supplied, fair wear and tear always expected.

Other extra work by crew, if any, to be mutually agreed and settled between Charterers and Master directly with prompt extra works bonus for crew.

## CLAUSE 44. CARGO HOLDS CLEANINGS

## CLAUSE 45. ARREST
Should the vessel be arrested hire under this charter party shall not be payable in respect of any period during which the vessel is not fully at Charterers' disposal, and any consequential expenses whatsoever shall be for Owners' account, unless such arrest is due to action against Charterers or sub-Charterers or their Agents or the Contractors or the Cargo Shippers or Consignees.
During the currency of this charter-party at the suit of any party having or purporting to have a claim against or any interest in the vessel,

## CLAUSE 46. LOG ABSTRACTS
Master is to forward promptly to Charterers completed log abstracts and port logs in English on the Charterers' forms as provided by the Charterers, for both deck and engine for each passage.

ADDITIONAL CLAUSES TO M/V "LONDON BRIDGE"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 19TH DECEMBER 2007

## CLAUSE 47. DRYDOCKING
During the duration of this Charter Party Dry Docking to be carried out only in case
of emergency.

## CLAUSE 48. CARGO CLAIMS
Cargo claims shall be settled in accordance with the Inter Club New York Produce
Exchange Agreement of September 1996 and any subsequent amendments.

Owners are to confirm to Charterers the name of P&I Club into which the vessel will
enter and shall remain throughout the whole period of the charter, unless/until is given
if there is a change. Upon Charterers' request confirmation of entry to be faxed by
P&I Club to Charterers directly, provided the Club agrees to do so. Otherwise Owners
shall provide a copy of general confirmation of entry issued by the Club.

## CLAUSE 49. CHARTERERS' FLAG/FUNNEL
Deleted

## CLAUSE 50. STEVEDORE DAMAGE
Notwithstanding anything contained herein to the contrary, the Charterers shall pay
for any and all damage to the vessel caused by stevedores provided the Master has
notified the Charterers and/or their agents in writing as soon as practical but not later
than 24 hours after any damage is discovered. Such notice to specify the damage in
detail and to invite Charterers to appoint a surveyor to assess the extent of such
damage.

  a) In case of any and all damage(s) affecting the vessel's seaworthiness and/or
     safety of the crew and/or affecting the trading capabilities of the vessel, the
     Owners shall immediately arrange for repairs of such damage(s) at Charterers'
     expense and the vessel is to remain on hire until such repairs are completed
     and if required passed by the vessel's classification society.
  b) Any and all damage(s) not described under point (a) above shall be repaired at
     the Charterers' option, before or after redelivery concurrently with the
     Owners' work. In such case no hire and/or expense will be paid to the Owners
     except and insofar as the time and/or expenses required for the repairs for
     which the Charterers are responsible, exceed the time and/or expenses
     necessary to carry out the Owners' work.

## CLAUSE 51. INSURANCE FOR HULL AND MACHINERY
Owners warrant that the vessel is covered by a reputable First Class Insurance for
Hull and Machinery and shall remain fully insured throughout the terms of the
charter.
Hull and Machinery value: US$.- 45,000,000

ADDITIONAL CLAUSES TO M/V "LONDON BRIDGE"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 19TH DECEMBER 2007

As long as the vessel is on hire to Charterers, Charterers to have the benefit of any return insurance premium receivable by Owners from their Underwriters (as and when received from Underwriters) after expiry of the relevant Policy Year by reason of the vessel being in port for extended period qualifying for such returns.

## CLAUSE 52. P AND I CLUB
Charterers to have the benefit of Owners P and I Club cover so far as Club rules permit. See also second paragraph of Clause 48.

## CLAUSE 53. ADDING OFF-HIRE TIME TO THE DURATION
Deleted

## CLAUSE 54. ARBITRATION
This agreement shall be governed by English Law and any dispute arising out of this agreement shall be referred to arbitration in London, one arbitrator being appointed by each party in accordance with the arbitration acts 1950 & 1979 or any statutory modification or re-enactment thereof for time being in force. On receipt by one party of the nomination in writing of the other party's, that party shall appoint their arbitrator within fourteen (14) days, failing which the decision of the single arbitrator appointed shall apply.

If two arbitrators properly appointed shall not agree they shall appoint an umpire whose decision shall be final.

In the event of the amount of claim and counter claim does not exceed the amount of US$ 50,000 the parties agree to refer any dispute to a sole arbitrator in accordance with the "Small Claims Procedure" on the London Maritime Arbitrators Association.

## CLAUSE 55. REDELIVERY CONDITIONS
Charterers to redeliver vessel with unclean holds against lumpsum payment if US$ 4,500.00 including removal/disposal or dunnages/debris/lashing.

## CLAUSE 56. CLAUSE PARAMOUNT AND OTHERS
General Clause Paramount, New Both –to-Blame Collision, New Jason clause, CONWARTIME 1993, as attached hereto, are to be considered part of this time Charter Party and same are to be incorporated in the Bills of Lading issued hereunder.

## CLAUSE 57. METRIC TONS
Wherever tons are referred to in this charter party, same are understood to be metric tons unless otherwise stated.

## CLAUSE 58. DEVIATION

9

ADDITIONAL CLAUSES TO M/V "LONDON BRIDGE"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 19TH DECEMBER 2007

Vessel has the liberty to deviate for the purpose of saving life and/or property and to tow or assist vessel(s) in distress. Such operations not to be deemed a deviation under this Charter Party, but all salvage attribution thus payable to the vessel to be equally divided with Charterers, after proper deduction of expenses, if any including Captain's and Crew's shares incurred in this respect.

## CLAUSE 59. FUEL OIL
Wherever the word "fuel" appears in this time charter party, same is understood to mean "bunkers". The bunkers specifications as per vessel's description.

## CLAUSE 60. LAYING-UP
Deleted

## CLAUSE 61. SLOW STEAM
Charterers have the option to slow steam vessel at any time during the course of the charter party on the basis of speeds and consumptions which to be advised but always within a range of safe, operable and harmless to the engine.

## CLAUSE 62. COMPLIANCE WITH INTERNATIONAL CONVENTION
In the event of the vessel being prevented from or unable to perform in accordance with the terms of this charter party, by reason of:

A/ action on the part of relevant authorities resulting from non-compliance with any compulsory applicable enactments enforcing all or part of any of the International Conventions in force.

B/ Labour stoppages in services essential to the operation of the vessel owing to her flag or ownership or management or the conditions of employment on board.

Any loss of time in the event A/ and/or B/ shall result in the vessel being off-hire and shall be dealt with in accordance with the off-hire clause.

It is understood that, if necessary, vessel will comply with any safety regulations and/or requirements in effect at ports of lading and/or discharging. Although other provisions of this charter make it the responsibility of the Owners, it is agreed that should the vessel not meet safety rules and regulations, Owners will make immediate corrective measures and any stevedores stand-by time and other expenses involved, including off-hire, will be for Owners' account.

Vessel to be delivered with valid deratization certificate on board and same to remain valid throughout the currency of this charter-party.

## CLAUSE 63. VESSEL'S DESCRIPTION

M/V LONDON BRIDGE
-----------------

10

ADDITIONAL CLAUSES TO M/V "LONDON BRIDGE"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 19TH DECEMBER 2007

ALL DETAILS ABOUT

VESSELS NAME   M/V LONDON BRIDGE

VESSELS EX NAMES     M/V OBC ANNA, M/V LUCASTA, EX M/V BULK ORION

OWNERS  L-BRIDGE LIMITED
        25 DORSET SQUARE
        LONDON
        NW1 6QG

BUILDERS     TSUNEISHI SHIPBUILDING CO LTD, JAPAN
BUILT  1994
SDWT/DRAFT     45708 MT/11.620 M
WDWT/DRAFT     44504 MT/11.378 M
TDWT/DRAFT     46917 MT/ 11.862 M
FDWT/DRAFT     45707 MT/ 11.886 M

PORT OF REGISTRY & REGISTRY NO. LONDON, OFFICIAL NO.: 908289
FLAG   BRITISH
SHIPS CLASSIFICATION SOCIETY   NK

IMO NO. 9082764
CALL SIGN    M Q Z C 9
LDT    LIGHT DRAFT: 3.41m, LOAD DRAFT: 11.620m (SUMMER)
GRT/NRT 26059 / 14880 MT
SUEZ GRT/NRT   26809.45 / 24193.32 MT
PANAMA GRT/NRT   NRT 21673 MT
LOA/BEAM/LBP   185.74m / 30.40 m / 177.0 m
DEPTH  16.50 M (MOULDED)
LIGHTSHIP    7473 MT

GRAIN /BALE   57208.4 CU.M. / 55564.9 CU.M. (INCL. HATCH COAMING)
CRANES  SWL 25 MT X 4 NOS. ELECTROHYDRAULIC DECK CRANES
4 x 10 CBM GRABS

CRANE MAX OUTREACH    6.80M FROM SHIPSIDE.

ONE MAIN ENGINE MITSUI MAN B&W 6S50MC (MARK V) X 1 SET
     MCO - 9750 PS (7171 KW) X 120 RPM
     CSO (85% MCO) - 8290 PS (6097 KW) X 114 RPM

GENERATORS     THREE - YANMAR M200L - SN, 440 KW

| TANK TOP STRENGTHS | HOMO. LOAD | ALT. LOAD |
|---|---|---|
| NO.1  13.73 MT / SQ.M | 22.09 MT / SQ M | |
| NO.2  13.73 MT / SQ.M | | |
| NO.3  13.73 MT / SQ.M | 21.94 MT / SQ M | |
| NO.4  13.73 MT / SQ.M | | |
| NO.5  13.73 MT / SQ.M | 22.09 MT / SQ M | |

UPPER DECK    3.45 MT/SQM EXCEPT BETWN HATCH ENDS
HATCH COVERS   NO.1: 2.08 MT/SQM, NO. 2-5: 1.75 MT/SQM
HOLDS/HATCHES  5 HOLDS / 5 HATCHES
HATCH COVERS   HYDRAULIC OPERATED, END FOLDING TYPE
     STEEL HATCH COVERS.

HOLD NO. 3    WATER BALLST CAPACITY-11769 CBM

HOLD CAPACITIES

11

ADDITIONAL CLAUSES TO M/V "LONDON BRIDGE"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 19TH DECEMBER 2007

NO.1  10361.60 CUM
NO.2  12199.40 CUM
NO.3  11731.10 CUM
NO.4  12193.80 CUM
NO.5  10722.50 CUM
TOTAL  57208.40 CUM
FUEL TANK CAPACITIES
FUEL OIL      1701.90 CUM (100%) INCL SERV & SETT TANKS
DIESEL OIL     86.60 CUM (100%) EXCL. SERV TANK.
BALLAST WATER CAPACITY  TANKS: 14827.2 CUM, NO.3 HOLD: 11769.0 CUM
FRESH WATER CAPACITY    389.0 CUM
CONSTANT EXCLUDING FRESH WATER  250.0 MT FRESH WATER EVAPORATOR
CAPACITY 10.0
MT/DAY

SPEED & CONSUMPTIONS
IN BALLAST      ABT 14.00 KTS @ ABT29.0 MT/DAY (ME=27.3 MT, AE=1.7 MT)
IN LOADED      AGT13.50 KTS @ ABT29.0 MT/DAY (ME=27.3 MT, AE=1.7 MT)
IN PORT IDLE    3.5 MT (AE=1.7 MT, BLR=1.8 MT)
IN PORT 24 HRS GEAR WORKING    5.2 MT (AE 2x1.7 MT + BLR 1.8 MT)
      VSL CONSUMES MDO WHILE MANOEUVRING IN/OUT OF
      PORT AND IN RESTRICTED WATERS.
BUNKER SPECIFICATION - IFO      ISO 8217:1996-380 CST RMG 35
BUNKER SPECIFICATION - MDO      ISO 8217 DMB  MDO: 3~8 CST AT 50 Deg. C,
BUNKER SPECUFICATION- MGO /BLENDED      N/A
HULL & MACHINERY INSURED WITH   THE NEW INDIA ASSURANCE CO. LTD.

P & I CLUB     GARD

IS VSL SUEZ, PANAMA CANAL FITTED      YES
HOLD VENTILATION( NATURAL OR ELECTRIC)  NATURAL
VESSEL ICE CLASS / STRENGTHENED NO
DOES VSL HAVE AUSTRALIAN HOLD LADDERS  YES
IS VESSEL ITF FITTED    YES
IS VESSEL LOG FITTED, INCLUDING LASHING NO
MATERIALS,STANCHIONS ETC      NIL
NUMBER AND NATIONALITY OF CREW  26 - INDIANS AND FILLIPINOS.

VSL'S CONTACT DTLS:
TEL: 764674963
FAX: 764674964
TLX: 423500051

HOLD DIMENSIONS (L XBX H )
NO.1 L:27.2m, B(F):21.0m, B(A):30.4m, H:16.8m (upto top of coaming)
NO.2 L:28.4m, B(F&A):30.4m, H:16.8m
NO.3 L:27.4m, B(F&A):30.4m, H:16.8m
NO.4 L:28.4m, B(F&A):30.4m, H:16.8m
NO.5 L:27.4m, B(F):30.4m, B(A):30.0m, H:16.8m

**CLAUSE 64. PILOT'S AND HOLD'S LADDERS**
Vessel to be equipped with pilot's and holds' ladders.

ADDITIONAL CLAUSES TO M/V "LONDON BRIDGE"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 19TH DECEMBER 2007

### CLAUSE 65. FLAG CHANGE/CREW NATIONALITY
Deleted

### CLAUSE 66. WAR CANCELLATION
In the event of any warlike operation involving minimum two of the following countries: U.S.A., United-Kingdom, Russia, the Peoples's Republic of China, France, Germany, South Korea, Japan directly affecting vessel's trading under this Charter Party, both parties shall mutually discuss as to cancel or continue this Charter Party.

### CLAUSE 67. GUARANTEED SPEEDS & CONSUMPTIONS
The Owners stipulate that the vessel is capable of maintaining and shall remain capable of maintaining throughout the period of this charter party on all sea passages from seabuoy to seabuoy with wind upto and including force 4 as per Beaufort Scale (speed shall be determined by taking the total hours at sea as shown in the log books)

guaranteed speeds and guaranteed daily consumptions as described in Clause 63. The period during which the vessel performs under the following conditions shall be excluded from performance calculations:

1. Any time during which speed is deliberately reduced to comply with Charterers' order/requirements.
2. Any time during which the vessel's speed in deliberately reduced for reasons of safety while navigating within narrow waters having due regard to vessel's size and draft or when assisting a vessel in distress or when saving life or property.
3. Any completed sea passage of less than twelve (12) hours.
4. Any period after continuous lay-up or idling or more than thirty (30) days until next drydocking /hull cleaning provided vessel remains on hire throughout the lay-up or idling period, but same without prejudice to Owners duty to maintain the vessel remains the vessel, her machinery and equipment in a good condition.

Unpremeditated stops not due to weather and sea conditions at the sea shall be counted as off-hire in full and shall be excluded from total hours at sea when calculated the average speed.

### CLAUSE 68. SMUGGLING
Any delay, expenses and/or fines incurred on account of smuggling to be for Charterers account, if caused by Charterers and/or persons appointed by Charterers, and to be for Owners account if caused by Owners, Officers and/or Crew and/or persons appointed by Owners.

ADDITIONAL CLAUSES TO M/V "LONDON BRIDGE"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 19TH DECEMBER 2007

### CLAUSE 69. WATCHMEN

Watchmen for vessel to be for Owners account if local regulation permit and watchmen for cargo to be for Charterers account.

### CLAUSE 70. RELEASE OF CARGO WITHOUT BILL OF LADING

Onwers to allow Charterers to discharge cargo without presentation of Original Bills Of Lading against Charterers providing Owners with Letter of Indemnity in accordance with P and I Club form and wording before discharge. The Letter of Indemnity to be signed by Charterers only. The Letter of Indemnity to be issued on Charterer's corporate letter head, ink-signed by Charterer's 2 authorised signatories giving names and designations and stamped with Charterer's corporate stem.
The authorised signatories must be holding a managerial position in Charterer's office.

The Letter of Indemnity to be faxed to Owners along with a signed copy of the Bills of Lading prior vessel arriving at the discharging ports. The original Letter of Indemnity to be couriered to Owner immediately thereafter.

### CLAUSE 71. COMMUNICATION WITH CREW

The Master the Chief Engineer and all deck officers including bosun are to be able to speak and understand English.

### CLAUSE 72. COMMUNICATION/VICTUALLING/ENTERTAINMENT

The vessel to be equipped with Inmarsat (telex) and facsimile transceiver. Charterers to pay Owners a lumpsum of US Dollars 1,250.00 per month or prorata to cover communications, victualling and entertainment expenses.

### CLAUSE 73. LIGHTENING

With regard to lightening, the following to apply:

A.  Vessel to lie alongside another vessel/coasters/lighters/floating cranes at a safe dock or wharf or place (including safe anchorage) for transhipment and/or loading and/or discharge of the cargo and/or for bunkering, if so ordered by the port authority or when or when such operation in customarily carried out at the port. Such operation to be carried out always always subject to good weather, smooth and calm sea, slight wind and current when Master thinks fit, under the supervision of Master regarding the general safety, who may at any time order the other vessel/coasters/lighters/floating cranes away from his vessel or remove his own vessel at Charterers' time and expenses including tug services if Master considers the double banking by ship's own propelling is risky, meanwhile Charterers to take normal customary precaution to Master's satisfaction for such operation. In any event sufficient fenders to be supplied by Charterers at their time and expense to the satisfaction of the Master.

B.  Charterers to have the privilege of ordering vessel to come alongside another vessel or vice versa, in order to transship load or discharge the cargo or to supply bankers at their convenience. However, Charterers to

14

ADDITIONAL CLAUSES TO M/V "LONDON BRIDGE"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 19TH DECEMBER 2007

supply extra fenders and/or securing materials, if necessary, up to Master's satisfaction, and indemnify Owners/vessel against all cargo claims subsequent to such operation. Charterers also to indemnify Owners from any additional insurance premium as charged by vessel insurers to cover additional risks for vessel, loss of hire and/or shipowners liabilities if not well covered by Owners' ordinary coverage under P and I Club arising from such operation, and Charterers to give Owners due advance notice of their intention to perform such operation advising approximate type and quantity of cargo involved, the other vessel concerned, destination of cargo and location of operation. Charterers, however, to indemnify Owners from any damage to vessel, claim from the other alongside vessel and/or loss of hire resultantly incurred from the unsafety of the operation and/or any commission occasioned by Crew members of both vessels..

Any delay occasioned due to operation of ship-to-ship transfer of cargo which is not attributable to the vessel/Owners shall not be counted as off-hire.

**CLAUSE 74.**
Deleted

**CLAUSE 75. JOINT ON-HIRE / OFF-HIRE SURVEY**
Owners and Charterers are to hold a joint on hire and off hire survey. The Owners will bear all expenses of the on hire survey including loss of time if any and the Charterers shall bear all expenses of the off-hire survey including loss of time, if any, at the rate of hire per day or pro rata.

Delivery time and redelivery time to be local, but converted to G.M.T. for means of calculation of on-hire time.

**CLAUSE 76**
Deleted

**CLAUSE 77. DEDUCTIONS FROM HIRE PAYMENTS**
A)    Charterers have the right to withhold from charter-hire during the period of this charter such amounts due to them for off-hire and Owners' disbursements, but with proper supporting statements to be sent to Owners promptly. Chrterers have the right to withhold from charter hires Owners' estimated advances and disbursements. But Charterers to always take Owners prior permission which not to be unreasonably withheld .

B)    Charterers to have the option of deducting from last hire payments the price of the estimated bunkers on redelivery, price of bunkers on redelivery USD 490 per metric ton IFO and USD 780 per metric ton MGO to be as per invoices from last Charterers/Sub-Charterers. Charterers have the liberty to retain sufficient funds from last hire payments in order to

15

ADDITIONAL CLAUSES TO M/V "LONDON BRIDGE"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 19TH DECEMBER 2007

cover Owners' disbursements and if not sufficient fm last two hire payments. Quantity on deliver/redelivery to be established by joint bunker survey. Settlement of final accounts shall be made upon receipt of vouchers from various ports of call.

## CLAUSE 78. QUALITY OF BUNKERS

As per vessel's description.

## CLAUSE 79. TAX CLAUSE

All taxes and/or dues on the vessel and/or cargo and freight arising out of cargoes carried or ports visited under this charter party shall be for Charterers' account.

## CLAUSE 80.
Deleted

## CLAUSE 81. U.S./KOREAN TRADE – UNIQUE BILL OF LADING IDENTIFIER CLAUSE
Non applicable.

## CLAUSE 82. GRAB DISCHARGE
Owners warrant that the vessel is suitable for grab discharge, as far as a single decker bulk carrier of this type can be. However unit weight of bulldozers will not exceed vessel's tanktop strength and her operation always under Master's supervision and satisfaction.

## CLAUSE 83.
Deleted

## CLAUSE 84. DEVIATION DUE TO ACCIDENT/BREAKDOWN
Should the vessel be put into any port other than those instructed by the Charterers by reason of accident or breakdown or for the purpose of landing any injured or sick Officer, including Master, or members of the crew, the port charges, pilotages, and any other expenses including loss of time shall be born by Owners, also should the vessel be put back whilst on voyage by way of the above mentioned reasons, the hire suspended from the time of her putting back until she is again in the same or equally favorable position and the voyage resume therefrom.

16

ADDITIONAL CLAUSES TO M/V "LONDON BRIDGE"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 19TH DECEMBER 2007

## CLAUSE 85. VACCINATION

Officers and crew to comply with vaccination and sanitary regulations in all ports of call and corresponding certificates to be available on board. Any detention and/or fines resulting from not having certificates on board to be for Owners' account.

Owners to arrange at their expense that the Master, Officers and crew of the vessel hold valid vaccination certificates against cholera and the yellow fever and small pox if and where required throughout time charter period.

Owners to comply for their account with all sanitary regulations at ports of call including water treatment of cholera where required.

## CLAUSE 86. RETURN OF CHARTER HIRE

Should the vessel be lost, except the vessel being pirated, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be returned to the Charterers at once.

## CLAUSE 87. CARGO TEMPERATURES

Non applicable

## CLAUSE 88. PURCHASE OPTION

Non applicable

## CLAUSE 89.

Deleted

## CLAUSE 90. WHEATHER ROUTING

If Charterers are appointing Ocean routes or similar institutions, Master to follow their instructions/requirements carefully.

For the purpose of this Charter Party "good weather conditions" shall be defined as weather conditions in winds not exceeding Beaufort Force 4. Evidence of weather reports to be taken from ship's deck log and Oceanroutes report. In case of discrepancies between the deck logs and Oceanroutes report, the Oceanroutes report to be taken as ruling.

17

ADDITIONAL CLAUSES TO M/V "LONDON BRIDGE"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 19TH DECEMBER 2007

## CLAUSE 91. SUPERCARGO/PORT CAPTAIN

The Charterers or their Supercargo(es) are entitled to call for speed trials, in ballast or loaded condition, shall indemnify the Owners for any extra expenses in this connection and vessel remaining fully on-hire. The Charterers and/or their Supercargo(es) may install and remove, at their expense, such instruments as may be required to check the vessel's speed and revolutions of the main engine.

The Charterers and/or their Supercargo(es) shall have free and reasonable access to the whole vessel including bridge, holds and engine room, and also to all vessel's tanks, including but not limited to, bunker, lubricating oil, sludge, ballast, and fresh water tanks. Whenever required, the Master must bring the vessel into even trim to ensure correct bunker soundings, provide same is practically possible. The Charterers and/or Surveyors to have free and reasonable access to the vessel's deck-log and engine-log books, tank plans, calibration scales and/or other plans as requested and are allowed to make copies of the original log books on board or ashore.

Owners to supply accommodation/victualling to Charterers Supercargo(es) in Owners' cabin only during stay of vessel in load and/or discharge port (in order to be able to assist/follow best possible for loading/discharging operations).

## CLAUSE 92. SIGNING BILLS OF LADING

With reference to Clause 8, Master to sign Bills of Lading at loading port(s), unless he is instructed by Charterers to sign only Mate Receipts, in which case Bills of Lading to be signed by Charterers or their Agents in strict conformity with Mate Receipts.

In case Bills of Lading signed by Charterers of their Agents same to be in strict conformity with Mates Receipts and draft copy of Bills of Lading to be approved by Owners /Managers before issuing .

In case of "Clean on Board" Bills of Lading is Master's right to reject any damaged cargo, prior loading of same on board, affecting the issuance of "Clean" Bills and Shippers/Charterers to replace same with sound cargo at Charterers / Shippers time and expense. In case Charterers request Master to load such cargo then relevant remarks to be inserted in Bills of Lading.

No liner Bills of Lading.

## CLAUSE 93. OWNERSHIP

Owners warrant that vessel covered by this Charter Party is not registered, owned or controlled by Cuba, Iraq, Libya, North Korea, Vietnam, Yugoslavia, Montenegro, Serbia.

Owners shall be liable to charter for any damages resulting from Owners' failure to comply with above warranty.

ADDITIONAL CLAUSES TO M/V "LONDON BRIDGE"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 19TH DECEMBER 2007

## CLAUSE 94. FITTINGS/PADEYES

Charterers to have the option to weld padeyes and/or lashing/securing devices/points at their expense and subject to the Master's approval which is not to be unreasonably withheld. Charterers to remove all such padeyes and/or their lashing/securing devices/points prior to redelivery if required by Owners.

## CLAUSE 95. DOUBLE BANKING

Charterers may carry-out lightening/discharge or top-off operation with vessel's holds ready for same, at their risk and expense by causing other vessel to be double-banked against vessel provided such action is carried out at a customary and safe place where such operations normally take place, and the operations are carried out to Master's satisfaction. Charterers will supply fenders for the operation if necessary to Masters' satisfaction, however fenders on board to be made available by vessel. Any additional insurance premium payable for the operation to be reimbursed by Charterers against supporting from Owners.

If any time during the operation, the Master considers it unsafe to continue the operation, Master may order the other vessel to cast off and move away. It is understood that the Master will always act reasonably in this respect.

Master and crew to render all customary assistance to carry out these activities as though carrying out for their own account.
See also Clause 73 paragraph A.

## CLAUSE 96. CANAL

Vessel in full all requirements for passage for the Suez Canal and have necessary valid Certificates on board on delivery and throughout the currency of this Charter Party. See also Clause 40.

## CLAUSE 97. STEEL CARGOES

If Charterers are to load steels then Owners are to have the option of appointing a P&I appointed surveyor to survey cargo during loading and assist vessel with ensuring accurate remarks are made in Mate's Receipts.
Cost of such surveyor shall be split 50/50 between Charterers and Owners.
If cargo of an unfinished nature, survey not to be required.

## CLAUSE 98. CALLING AUSTRALIA

Non applicable

## CLAUSE 99. HAMBURG RULES

Neither the Charterers nor their Agents shall permit the issue of any Bill of Lading, waybill or other document evidencing a contract of carriage (whether or not signed on behalf of the Owners or on the Charterers behalf or on behalf of any sub-Charterers) incorporating, where not compulsorily applicable, the Hamburg Rules or any other legislation giving effect to the Hamburg Rules or any other legislation imposing

ADDITIONAL CLAUSES TO M/V "LONDON BRIDGE"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 19TH DECEMBER 2007

liability in excess of Hague or Hague/Visby Rules. The Charterers shall indemnify the Owners against any liability, loss or damage which may result from any breach of the foregoing provisions of this clause.

## CLAUSE 100. CARGO GEAR

Vessel's cargo gear and all other equipment shall comply with the regulations of the countries in which the vessel will be employed and Owners are to ensure that the vessel is at all times in possession of valid and up-to-date certificate to comply with such regulations. If stevedores, longshoremen or the workmen are not permitted or refuse to work due to failure of Master and/or Owners and/or Owners' Agents to comply with the aforementioned regulations or because vessel is not in possession of such valid and up-to-date certificates, the Charterers may suspend hire for the time thereby lost and Owners to pay all expenses incurred incidental to and resulting from such a failure.

## CLAUSE 101. MAINTENANCE OF VESSEL'S GEAR & EQUIPMENT

All cargo handling gear and equipment including derricks/cranes/winches to be maintained in good working order by Owners. In the event of a breakdown or malfunction of derrick(s), crane(s), winch(es) by reason of damage, disrepair, disablement or insufficient power, the hire to be reducted pro-rata for a period of such inefficiency in relation to the number of gangs-affected and any stevedore standby costs incurred are to be for Owners' account. Alternatively, Owners have the option to hire shore gears, in which case Owners to pay for the relevant cost but vessel to remain fully on hire.

## CLAUSE 102. DANGEROUS CARGO

Notwithstanding provisions of Clause 35A. Charterers always to have the option to load dangerous cargoes up to 1000 Metric tons provided same is packed, labeled, loaded, stowed, lashed, secured, dunnaged and discharged in accordance with IMO as well as local/international regulations and always excluding IMO classes 1 and 7.

## CLAUSE 103. FUMIGATION

In fumigation is necessary due hereto or due to anything for which Owners are responsible, cost of same and detention to be for Owners account, as well as cost to unload and reload the cargo, if any on board when fumigation to take place.

## CLAUSE 104. DECK CARGOES

Deck cargoes to be loaded, stowed, secured, and discharged at Charterers' expenses and risk but under Masters' supervision. In order to obtain maximum deckload under consideration of the safety of the vessel and good practice in the trade, Charterers may require to press fuel, water and ballast tanks, however, Master to have final decision hereon.

ADDITIONAL CLAUSES TO M/V "LONDON BRIDGE"
ACCOUNT COSMOTRADE EXPORTS S.A.
DATED 19TH DECEMBER 2007

Charterers must describe following remarks on the Bills of Lading when the vessel loads cargo on deck: "carried on deck at Shippers' risk without liability to vessel/Owners for loss or damage howsoever caused."

**CLAUSE 105. LOADING OF BULK CEMENT**
Deleted

**CLAUSE 106. REQUISITION**
Should the vessel be requisitioned by any governmental authority during the currency of this Charter Party, vessel shall be put off-hire hereunder for the period of such requisition and any hire or other compensation receivable for such requisition and any hire or other compensation receivable for such requisition shall be Owners' account. If the period of requisition is, or is estimated to be, more than sixty (60) consecutive days, Charterers have the option of canceling this Charter Party.

**CLAUSE 107. CHANGE IN APPLICABLE LAWS & REGULATIONS**
If the following circumstances affects the performance by Owners of this Charter, Charterers and Owners shall discuss the situation in good faith to settle down the problem:

(A)    When the existing laws and regulations which apply to this charter contract have been changed or revised by the relevant authorities during the currency of this charter.

(B)    When any laws and regulations have come into force during the currency of this charter.

**CLAUSE 108.**
Charterers  to have the option to hose test or ultrasonic test the hatch covers at the loading ports in their time and at their expense. If the hatch(es) are found not to be watertight, the Owners will immediately take all the necessary steps and make all the necessary arrangements  in order to make the hatch covers watertight. Vessels hatch covers have been hose tested and have been found to be water tight. In case if any minor leaks are found then Owners will take such steps to rectify same including but not limited to using ramnek tapes to further seal hatches after loading to ensure water tightness If after three days of first failing the hose and/or ultrasonic test the hatch covers are still found not to be watertight the Charterers shall have the option of cancelling this Charter Party.

**U.S.   CUSTOMS   ADVANCE   NOTIFICATION/AMS   CLAUSE   FOR TIMECHARTER PARTIES**
Non applicable.

Drawn up on the 19th December 2007

CHARTERERS                                                        OWNERS

21

Exhibit B

## PREFINAL HIRE STATEMENT

| DELY | FROM | 20/12/2007 10:00 TILL | REDELY | 1/2/08 18:54 |
|------|------|------|------|------|
| PERIOD | | 12:8:54 DD:HRS:MIN | OR PERIOD | 43,370833 |
| OFF HIRE | FROM | 0/1/1900 0:00 | TILL | 0/1/00 0:00 |
| LESS OFF HIRE PERIOD: | | 0:0:00 DD:HRS:MIN | OR PERIOD | 14,068923 |
| NET PERIOD: | | | | 29,301910 |
| DAILY HIRE: US | $ 68.000,00 | | | |

### AMOUNT DUE TO OWNERS

| | | | | | | |
|---|---|---|---|---|---|---|
| 1. NET HIRE | 29,301910 D x | | $ 68.000,00 PER DAY | | USD | $1.992.529,90 |
| 2. BALLAST BONUS | | | | | USD | |
| 3. BUNKERS ON DELIVERY AS PER SURVEY | | | | | USD | $0,00 |
| | IFO | 724,935 MT x | | $490,00 PMT | USD | $355.218,15 |
| | MDO | 8,931 MT x | | $780,00 PMT | USD | $6.966,18 |
| 4. CHRRS EXPENSES C/V/E USD | | 1250 PM/PR | | | USD | $1.220,91 |
| 5. I.L.O.H.C. | | | | | USD | $4.500,00 |
| | | | | | USD | |
| | | | | | USD | |
| | | | | TOTAL | USD | $2.360.435,15 |

### LESS:

| | | | | | | |
|---|---|---|---|---|---|---|
| 1. COMMISSION | 5,00% PCT ON | | HIRE | | USD | $99.626,50 |
| 2. COMMISSION | PCT ON | | B.BONUS | | USD | $0,00 |
| 3. BUNKERS ON REDELY AS PER MASTER | | | | | | |
| | IFO | 782,200 MT x | | $490,00 PMT | USD | $383.278,00 |
| | MDO | 15,100 MT x | | $780,00 PMT | USD | $11.778,00 |
| 4. HIRES PAID | 1ST | 24/12/2007 | | | USD | $1.332.063,00 |
| | 2ND | 17/1/2008 | | | USD | $895.874,71 |
| | 3RD | 28/1/2008 | | | USD | $193.925,00 |
| | 4TH | 31/1/2008 | | | USD | $64.641,67 |
| | 5TH | | | | USD | $0,00 |
| | 6TH | | | | USD | $0,00 |
| 5. EST.OWNERS EXPS LOADPORT | | | | | USD | $1.000,00 |
| EST.OWNERS EXPS DISPORT | | | | | USD | $2.000,00 |
| 6. ON HIRE BUNKERS SURVEY AT ILIYCHEVSK 50% OWNERS PORTION USD 350,00 / 2 = | | | | | USD | $175,00 |
| 7. EXTRA COSTS AND EXTRA EXPENSES DUE TO GENERATORS BREAKDOWN | | | | | USD | $68.382,54 |
| | | | | | USD | |
| 8. BUNKERS CONSUMPTION DURING OFF-HIRE | | | | | USD | |
| IFO: | 11,635416 X | | 5,50 MT | $490,00 | USD | $31.357,45 |
| IFO: | 0,079861 X | | 3,50 MT | $490,00 | USD | $136,96 |
| IFO: | 0,000000 X | | 6,16 MT | $490,00 | USD | $3.018,40 |
| MDO: | | | MT | $780,00 | USD | $0,00 |
| 9. BUNKER PRICES DIFFERENTIALS | | | | | USD | |
| | | | | TOTAL | USD | $3.087.257,22 |

| | | | |
|---|---|---|---|
| | **BALANCE DUE TO CHARTERERS** | USD | $726.822,08 |

### N.B

**1. DAMAGES / TIME LOST AT ILYICHEVSK DUE TO VESSEL'S GENERATORS OUT OF ORDER**
AS PER MESSRS BOTRANS LTD REPORT TIME LOST DUE TO GENERATOR BREAK DOWN:  11,635416 DAYS
BUNKERS CONSUMPTION DURING LOST TIME IFO 11,635416 DAYS x 5,50 MTS PD =  63,995 MTS

**2. DAMAGES / TIME LOST AT ISTANBUL ANCHORAGE DUE TO SUPPLY OF LUBRICANTS**
FM 09/01/2008 13:35 HRS UP TO 09/01/2008 15:30 HRS = 01 HRS 55 MINS OR  0,079861 DAYS
BUNKERS CONSUMPTION DURING LOST TIME IFO 0,079861 DAYS x 3,50 MTS PD =  0,279 MTS

**3. DAMAGES / TIME LOST OUT OF JEDDAH PORT**
A. AS PER MASTER'S NOON REPORT ON 15/01/2008 DISTANCE TO GO JEDDAH 128 NM SPEED 13,13 KNS
AND CONS IFO 23,50 MTS. ROB IFO 543,20 MTS
VSL NEEDED FM 15/01 NOON TO JEDDAH 128 : 13,13 = 9HRS 45 MIN OR 0,406194 DAYS x 23,50 MTS PD = 9,54 MTS IFO
THEREFORE VSL SHOULD ARRIVE JEDDAH WITH IFO : 15/01 NOON ROB 543,20 - 9,54 MTS = 533,66 MTS IFO
DUE TO VSL'S DRIFTING ARVD JEDDAH WITH IFO ROB 527,50 WHICH MEANS OVERCONSUMTION OF 6,160 MTS IFO

B. VESSEL STAYED OUT OF JEDDAH DRIFTING AS PER OWNERS INSTRUCTIONS.
SHOULD ARRIVE JEDDAH FM NOON 15/01/08 (128 MILES) AFTER 9 HRS 45 MIN, ON 15/01 21:45 HRS.
SHE ARRIVED JEDDAH 17/01 23:48 HRS WHICH IS = 02 DAYS 02 HRS 03 MIN  LATER   OR          2,085417 DAYS

**4.DAMAGES / TIME LOST AT KARACHI AS MASTER ALLOWED TO WORK ONLY 3 CRANES DUE TO GENERATOR PROBLEM**

FM 28/01/2008 08:15 HRS UP TO 29/01/2008 10:00 HRS = 01 DAY 01 HRS 45 MINS OR 1,072917 DAYS / 4 = 0,268229 DAYS

**ADD/NAL COSTS AND EXPENSES RELATING TO  VESSEL'S GENERATORS BREAKDOWN    USD 68.382,54**

| | |
|---|---|
| COST OF ELECTRICITY | USD 1.882,54 |
| COST OF GANGS CANCELLATION DUE TO LACK OF ELECTRICITY | USD 2.500,00 |
| COST OF IDLE GANGS | USD 2.500,00 |
| EXTRA D/AS AND BERTHING DUES AT LOADBERTH DUE TO EXTRAORDINARY DELAY. | USD 3.000,00 |
| COST OF HIRING SHORE CRANES | USD 5.700,00 |
| COST OF CARGO TRANSPORTATION FM BERTH OF M/V LONDON BRIDGE TO OTHER BERTH FOR LOADING ON THE VESSEL  M/V TAI AN HAI | USD 25.300,00 |
| COST OF CARGO TRANSPORTATION FM BERTH OF M/V LONDON BRIDGE TO OTHER BERTH FOR LOADING ON THE VESSEL  M/V FREE DESTINY | USD 27.500,00 |
| TOTAL EXPENSES | USD  68.382,54 |

B.RGRDS
ACCS DEPT / LEFTERIS LOUTRAGOTIS

**Exhibit C**



CONTACT US | CAREERS

## BRITISH MARINE

Thursday, February 28, 2008

HOMEPAGE    ABOUT US  |  SHIPPING  |  OUR FLEET  |  UK MERCHANT FLEET  |  NEWS  |  PRESS

### Our Fleet: London Bridge

AQUITANIA
BRITANNIA
CLEMENTINE
EXCALIBUR
GLORIANA
GWENDOLEN
LONDON BRIDGE
MARYLEBONE
MIRANDA ROSE
SALOME
TRAFALGAR
VOLUMNIA

CHARTERED SHIPS

| | |
|---|---|
| Type: | Geared Handymax |
| Classification Society: | NK |
| Flag: | British |
| IMO: | 9082764 |
| Call Sign: | MQZC9 |
| Builder: | Tsuneishi Shipbuilding Co Ltd, Japan |
| Built: | December 1994 |
| Summer DWT/Draft: | 45,706 Mt/11.925 Mtrs |
| GT/NT: | 26059 / 14680 |
| L.O.A. / Beam: | 189.80 / 32.26 Mtrs |
| Depth: | 18.50 Mtrs |
| TPC: | 49.6 Mt |
| Main Engine: | Mitsui MAN B&W S50MC |
| Gear: | JIB Cranes, 4x25 Mt |
| Grabs: | 4 x 12 CBM |
| Holds / Hatch: | 5/5 |
| Hold Dimensions: | No 1: 20.0 x 15.3 Mtrs<br>Nos 2-5: 20.8 x 15.3 |
| Tank Top Strengths: | No. 1 & 5: 22.09 Mt/m2<br>No. 2 & 4: 13.73<br>No. 3: 22.94 |
| AHL: | Yes |
| Speed: | 13.8 Kts |
| CO2 in Holds: | No |
| Grain Capacity: | 57,206.4 CBM |
| Bale Capacity: | 55,584.9 CBM |
| Owners: | L Bridge Limited |
| Agents: | British Marine Plc, London |

Exhibit D

```
tsala              28-02-2008 13:05
From:              "Paul Rodgers"<prodgers@rodgersco.com>
Sender:
To:                "COSMOTRANS NAVIGATION INC."<operation@cosmotrans.gr>;
Cc:
Bcc:
Subject:           London Bridge
Date:              11/1/2008 2:46:05 μμ
Attachments:       Copy of LONDON BRIDGE OFFHIRE.xls,
```

Attn: Capt. George


Dear Sirs,


RE: mv "London Bridge" C/P dd 19 December 2007


We act on behalf of British Marine PLC the 'Owners' of the mv LONDON BRIDGE
('the Vessel'). Owners agreed to time charter the Vessel to Cosmotrade
('Charterers') on 19 December 2007 on terms set out in an agreed fixture recap
of that date ('the Charter') which incorporated the terms of the m/v "ALAM
SEMPURNA" Time Charter dated 25 August 2006.


In breach of their obligations under the Charter, Charterers have unlawfully
withheld hire payable for a total of 13.6 days and have withheld a further
$100,000 in respect of alleged and unspecified "extra costs". In Charterers'
fax sent to Owners dated 17 December 2007, they purport to set out alleged
justifications for their failure to pay the hire due under the Charter. For the
reasons set out below, Owners object to those unlawful deductions and demand
that Charterers remit the outstanding amount of US$ 783,753.70 due to Owners
under the Charter on or before close of business Monday 14 January 2008.


Net loss of time off -hire provision


It is common ground that the Vessel arrived at the loadport on 20 December 2006
and that loading commenced at 0445 hours on 21 December 2006. It is not
disputed that on 21 December 2006 the Vessel suffered generator breakdowns
which resulted in Charterers hiring shore cranes to assist in the loading
operation.


We attach to this letter a spreadsheet which sets out an accurate calculation
of the actual time lost during loading as a result of the generator breakdowns.
This spreadsheet shows that the total working time lost when calculated on a
pro-rata basis was in fact 3.46168 days. Owners do not seek to contest that
Charterers are entitled to make a deduction from hire due in respect of this

working time lost. However Owners reject utterly Charterers' inaccurate calculation of 13.6 days lost, which has been assessed on a basis which is contrary to that set out in the Charter terms.

The Charter incorporated the standard form Clause 15 NYPE off-hire which is a net off-hire provision. Clause 15 of the Charter provides as follows;

"That in the event of loss of time from deficiency and/or default of crew or officers and/or deficiency of men or stores, fire, **breakdown or damages to hull, machinery or equipment**, grounding, detention by average accidents to ship or cargo, or oil pollution only due to ship's fault, drydocking for the purposes of examination or painting bottom, or any other cause whatsoever preventing the full working of the vessel, or any extra delay in consequence thereof the payment of hire shall cease for the actual time thereby lost .." [bold added]

In addition Clause 23 of the Charter provides:

"Vessel to work day and night if required by Charterers and all cargo gear to be at Charterers' disposal during loading and discharging; shore cranemen to be employed and paid by Charterers. **In the event of a disabled cranes or derricks winch or winches or insufficient power to operate winches, Owners to pay for shore engines in lieu thereof if required and pay any loss of time occasioned thereby.**" [bold added]

Furthermore Clause 101 'Maintenance of Vessel's Gear and Equipment' provides:

"All cargo handling gear and equipment including derricks/cranes/winches to be maintained in good working order by Owners. **In the event of a breakdown or malfunction of derrick(s), crane(s), winch(es) by reason of damage, disrepair, disablement or insufficient power, the hire to be reduced pro-rata for a period of such inefficiency in relation to the number of gangs-affected and any stevedore standby costs incurred are to be for Owners' account.** Alternatively Owners have the option to hire shore gears, in which case Owners to pay for the relevant cost but vessel to remain fully on hire." [bold added]

It is well established that the above clauses constitute "net loss of time clauses" and charterers are referred to various case law (see The Pythia [1982] 2 Lloyds Rep 160 and The HR Macmillan [1973] 1 Lloyds Rep 27). Furthermore Clause 101 above provides that any loss of time due to inoperative cranes is to be calculated by Charterers on a pro-rata basis.

When assessing the hire due to Owners under the Charter, Charterers have failed to make any allowance for the working of some but not all cranes and have therefore failed to make any pro-rata calculation. Charterers' off-hire assessment is thus incorrect and would be rejected as such by any arbitration tribunal.

Alleged Breach of Contract

Owners do not accept Charterers purported deduction of $100,000 in respect of "extra costs". Charterers have failed to substantiate this claim or any part thereof as required. If this amount is intended to represent "damages" for any alleged breach of Charter (which is not admitted) then the obligation rests on Charterers to prove that Owners breached a relevant term of the Charter and that these "extra costs" were incurred as a direct result of that breach. Charterers have provided no evidence to date which would support any such argument of breach.

Lien

Owners remind Charterers that pursuant to Clause 18 of the Charter:

"That the Owners shall have a lien upon all cargoes, and all sub-freights and sub hire for any amounts due under this Charter, including average contributions..."

Owners are aware that the Vessel is now on her way to discharge port. Should Charterers fail to remit the hire due to Owners under the Charter within deadline Monday 14 January 2008, Owners shall take all necessary steps to secure a lien over the cargo and/or take appropriate measures to obtain security for the unpaid hire..

Owners expect to receive the outstanding hire due from Charterers in the amount of  US$ 783,753.70  on or before close of business on Monday 14 January 2008. Should Charterers fail to remit to Owners the full amount due by that date, Owners shall have little choice but to commence arbitration proceedings against Charterers for recovery of the said amount together with interest and costs, in accordance with Clause 54 of the Charter.

Yours faithfully,

Paul Rodgers
RODGERS & CO SOLICITORS (ASIA) PTE LTD
5 Shenton Way #19-01, UIC Building
Singapore 068808
Tel: +65 6225 4020
Fax: +65 6225 4022
* * * * * * * * * * * *
Disclaimer
Any opinions expressed in this email are those of the individual and not

necessarily of Rodgers & Co Solicitors (Asia) Pte Ltd email and any files transmitted with it, including replies and forwarded copies (which may contain alterations) subsequently transmitted from Rodgers & Co Solicitors (Asia) Pte Ltd., are confidential and solely·for the use of the intended recipient. It may contain material protected by legal privilege. If you are not the intended recipient or the person responsible for delivering to the intended recipient, be advised that you have received this email in error and that any disclosure or copying of all reliance upon the information contained in this message is strictly prohibited.

If you have received this email in error please notify Rodgers & Co Solicitors (Asia) Pte Ltd. by telephone on +65 6225 4020. Please then delete this email and destroy any copies of it.

```
TO..: "SEA POWER MARITIME INC"
FROM: "Optima Chartering"
DATE: 20-DEC-2007 07:43
MSG.: 14243491
FOR POST-FIXING MSGS PLS USE operations@optimashipbrokers.gr
```

gd day

re london bridge/cosmotrade
---
foll from ows

quote


-Notice on Fixing:

Vessel at present at Odessa anchorage and is ready in all respects to be delivered AGW WP
UCE.

Basis which we will be delivering the vessel to charterers on 20.12.07 dop Odessa AGW WP
UCE.

This notice on fixing is given in good faith based upon the info presently available and
subject to all going well, weather permitting, unforseen circumstances always excepted.

- Pls request charterers to send the voyage instructions to the vessel.

Thanks and Best Regards
Savitha Nambiar

Operations
Ocean Bulk Carriers Ltd, London
( As Agents For British Marine Plc )

unquote

regards

------------------------------------------------------------------------
OPTIMA  SHIPBROKERS
175, K. KARAMANLI  AVENUE  -  166 73  VOULA,   GREECE
TEL: +30 210 8918500   FAX: +30 210 8996689
E-MAIL: operations@optimashipbrokers.gr
WEB: www.optimashipbrokers.com

========================================================================
----------Original Message-----------
From:"OPTIMA OPERATION"<operations@optimashipbrokers.gr>
Date sent:24/12/2007 3:36:08 μμ
Subject:RE: LONDON BRIDGE / COSMOTRADE

TO..: "SEA POWER MARITIME INC"
FROM: "Optima Chartering"<operations@optimashipbrokers.gr>
DATE: 24-DEC-2007 15:36
MSG.: 14274798


FOR POST-FIXING MSGS PLS USE operations@optimashipbrokers.gr

Gd aftn

Foll rcvd
```

Quote

RE: LONDON BRIDGE / COSMOTRADE
=

PLS FIND ATTACHED MSG FRM MASTER REQUESTING FOR SUPPLY OF MDO.
CHRTS TO PLS CONFIRM ARRANGEMENT ASAP.

Thanks & Best Regards

----- Original Message -----

To: Cosmotrans
Cc: Britmarine ops
Cc: Polaris

Ref: LNBR/241207/0828

Kind attn: Capt. Antonios Dagiasis
===================================

Good day sir,

Please note that we are running short of diesel oil (MDO) and considering delay here at
Ilyichevsk and unpumpables, we once again recommend to supply the vessel with bunker at
Ilyichevsk before the situation gets worse.  Please kindly reconsider and arrange for
supply.

Best Regards
Capt. Aniruddha Desai
Master
London Bridge

Unquote
Brgds

-------------------------------------------------------------------------
OPTIMA  SHIPBROKERS
175, K. KARAMANLI AVENUE  -  166 73  VOULA,   GREECE
TEL: +30 210 8918500   FAX: +30 210 8996689
E-MAIL: operations@optimashipbrokers.gr
WEB: www.optimashipbrokers.com

Unquote:
=========
We therefore kindly request you to amend relevant application for rule b attachment to
include all three companies, i.e. registered Owners, managers and co-managers.

We thank you in advance.

Best Regards
Nikoletta Tsala

## ATTORNEY VERIFICATION

State of New York    )
                     ) ss.:
County of New York  )

PETER J. GUTOWSKI, being duly sworn, deposes and says as follows:

1.      I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2.      The sources of my information and the grounds for my belief are communications, information and documentation provided by our client and/or by solicitors representing our client.

3.      The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

_____
                    Peter J. Gutowski

Sworn to before me this
29th day of February 2008

_____
Notary Public

MELISSA COLFORD
Commissioner of Deeds
City of New York-No. 5-1692
Certificate Filed in New York
Commission Expires 4/1/ 0ŷ